THE RYKERS RIDGE TURNPIKE Co. and Another *v.* SCOTT and Others.

GRAVEL ROADS.—*Act of 1867.—Construction of.*—The act of March 11th, 1867 (Acts 1867, p. 167), authorizing plank, macadamized and gravel road companies to procure assessments on lands to aid in the construction of such roads, was available to such companies organized *after* the passage of that act.

SAME.—*Constitutional Law.—Taxation.—Local Assessment.*—Said act of 1867 was constitutional. *Law* v. *Madison, &c., Gr. R'd Co.*, 30 Ind. 77, adhered to.

APPEAL from the Jefferson Circuit Court.

FRAZER, C. J.—The only question involved (and not heretofore decided by this court) is whether the act of March 11th, 1867, authorizing plank, macadamized and gravel road companies to procure assessments on lands to aid in the construction of such roads, (Acts 1867, p. 167) is available to such companies organized *after* the passage of that act.

The first section of the act, upon the language of which the decision of the question hinges, provides, that "any organized * * company, under and pursuant to the provisions of an act of the General Assembly of the State of Indiana entitled, 'an act authorizing the construction of plank, macadamized, and gravel roads,' approved May 12th, 1852, * * * may petition," &c., &c.

We are unable to give the question any other than an affirmative answer. The best grammatical construction of the language requires it, in order to make good sense out of the section. If the mere arrangement of the words is to govern, without some transposition, and the word "organized" be regarded as an adjective, then the section would read, in effect, that such companies may petition for the assessment pursuant to the act of May 12th, 1852—an act which makes no provision whatever for such petition or assessment! This would be utterly inadmissible; for nothing can be clearer than that the legislature did not intend to say any such thing as that. It is true that the word

"organized," regarded as a verb or participle, is in the past tense, and some consideration is due to this circumstance. An examination of the whole act will, however, show that tenses were not used with entire accuracy, and that if they are to govern its construction, it will be a mass of nonsense. This is especially true of the proviso to the third section, and of the fourth and fifth sections. It will be observed upon a reading of the whole section, that the petition is to be addressed to the commissioners of the several counties "through which such proposed road is or may be located." This contemplates, as well cases where the location of the road shall be made after the passage of the act, as where such location had been made before. But by the act of 1852 the termini and general line of the road must be described in the articles of association under which the company organizes. Though the particular and definite location of the road may be afterwards made, yet this could not materially vary from the route described in the articles, for it would open a wide door to fraud.

Then, it is difficult to find a reason which could have induced the legislature so to distinguish between such companies organized before and after the passage of the act of 1867. It cannot be supposed, for it is obviously untrue, that companies had been previously organized to make all such roads as it was important should be constructed, or even that the roads contemplated by such existing companies were more important than many others. If the act of 1867 was wise as applied to all companies then existing, it was equally so as to all those which might subsequently be organized.

Upon the question of the constitutionality of the act of 1867, also here involved, decided in *Law v. Madison, &c., Co.,* 30 Ind. 77, I held the negative, differing from my brethren. That case was decided after the fullest consideration that we were capable of giving to the question, and may be regarded as a settlement of it, for the present at least, though I am still firmly of the same opinion that I then

The Rykers Ridge Turnpike Co. and Another *v.* Scott and Others.

entertained.    Inasmuch as I could not then well take the time necessary to prepare a dissenting opinion, I now indicate briefly the line of reasoning by which I was governed, and which governed me also in the decision of *Bright* v. *M'Culloch*, 27 Ind. 223, and upon which only, in my judgment, that case can stand.    The distinction between an assessment and a tax, as terms indicating public burdens, is an American invention of recent origin.    In England there was no occasion for such distinction.    Once the terms meant the same thing, and were used interchangeably.    An assessment, distinguished from a tax, had not at the adoption of our Constitution acquired in general American law such a fixed meaning that the line distinguishing it from a tax was precisely defined.    And yet that line should be definite and fixed, else the requirement of the Constitution that taxes should be levied upon the valuation of property by an equal and uniform rate becomes uncertain and possibly of little, if any, effect.    In our State, however, under the Constitution of 1816, containing no such restriction as to taxation, the term "assessment" had long been used by the legislature to designate levies of money for various specified objects.    As there was no general usage defining the term, I thought it fair and most safe to assume that it was used in the Constitution in no larger sense than it had been previously employed in our legislation.

I will not elaborate the subject.    These considerations would induce me to affirm the judgment below; but the majority of the court adhere with equal confidence to the views expressed in *Law* v. *The Madison, &c., Co., supra.*

Reversed, with costs, and direction to sustain the demurrer to the complaint.

*E. R. & J. L. Wilson,* for appellants.

*C. E. Walker,* for appellees.